UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ELLIOT CALLENDER,

<p style="margin-left:2em">Plaintiff,</p>

- against -

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., DETECTIVE DEAN CAMPBELL,
Shield No. 1220, individually and in his official capacity,
POLICE OFFICERS JOHN DOE 1-10, fictitious names
used to identify presently unknown service members of the
81st Precinct, individually and in their official capacities,
CORRECTION OFFICERS JOHN DOE 1-25, fictitious
names used to identify presently unknown correction
officers, individually and in their official capacities, and
JOHN/JANE DOES 26-50, fictitious names used to identify
presently unknown healthcare workers individually and in
their official capacities,

<p style="margin-left:2em">Defendants.</p>
--------------------------------------------------------------------X

Docket No.

**VERIFIED COMPLAINT**

Jury Trial Demanded

     Plaintiff, ELLIOT CALLENDER, by his attorneys, HELD & HINES, LLP, as and for his

Verified Complaint, hereinafter states and alleges as follows upon information and belief:

**PRELIMINARY STATEMENT**

     1.    Plaintiff commences this civil rights action seeking compensatory damages and

attorney's fees against all defendants, together with punitive damages against the non-municipal

defendants, for their repeated violations of Plaintiff's constitutional rights while acting under

color of law.

     2.    Plaintiff also asserts state law claims pursuant to this Court's supplemental

jurisdiction for violations of his rights secured by Article I §12 of the New York Constitution, as

well as Article 15 of the New York State Executive Law ("NYS Human Rights Law"), New

York State Civil Rights Law §40 *et seq.* (the "NYS Civil Rights Law"), Administrative Code of

the City of New York §§8-107 *et seq.*, 8-502 *et seq.* and 8-603 *et seq.* (the "City Human Rights Law"), New York State Correction Law §500-b ("Correction Law"), as well as common law claims of assault, battery, false arrest, false imprisonment, malicious prosecution, negligent hiring, training and retention, intentional infliction of emotional distress, negligent infliction of emotional distress, neglect and failure to provide medical treatment, general negligence, and failure to protect.

3.      Plaintiff suffered physical and emotional injuries, pain and suffering, disability from his usual activities, loss of liberty, and pecuniary losses stemming from an April 7, 2015 excessive use of force, bogus arrest, false imprisonment, and malicious prosecution by the defendant police officers. After being taken into custody, the defendant police officers, correction officers and healthcare workers recklessly disregarded Plaintiff's serious injuries and denied him access to adequate and timely medical care.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C. §§1983 *et seq.*; the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America; the Constitution of the State of New York; the NYS Human Rights Law; the NYS Civil Rights Law; the City Human Rights Law; the New York Correction Law; and the Charter and Administrative Code of the City of New York.

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

6.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

7.      Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 and City Human Rights Law §8-502(f) for pendent claims arising under New York state and local law.

8.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Kings County, New York, which is within this judicial district.

## **PARTIES**

9.      At all times mentioned herein, Plaintiff was and remains a resident of the City and State of New York, County of Kings.

10.      Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and still is a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the City and State of New York.

11.      Upon information and belief, and at all times mentioned herein, the City maintained the New York City Police Department ("NYPD"), New York City Department of Correction ("DOC"), New York City Department of Health and Mental Hygiene ("DOHMH"), and Correctional Health Services ("CHS") pursuant to law.

12.      Upon information and belief, and at all times mentioned herein, CHS was under the supervision and control, auspices and/or affiliation of DOHMH.

13.      At all times mentioned herein, Defendant Corizon Health, Inc. was a foreign corporation organized and existing by virtue of the laws of the State of Delaware, with its principal executive office in Tennessee, and was authorized to and did transact business in the

State of New York.

14.     At all times mentioned herein, Defendant Corizon, Inc. was a foreign corporation organized and existing by virtue of the laws of the State of Missouri, with its principal executive office in Tennessee, and was authorized to and did transact business in the State of New York.

15.     At all times mentioned herein, Corizon Health, Inc. and Corizon, Inc. (collectively "Corizon"), its site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff, were required to provide medical, mental health, dental and ancillary services to prisoners in the City's jails and hospital prison wards pursuant to a contract with the City, DOHMH and/or CHS. In carrying out its duties, Corizon was required to ensure that its policies, practices and procedures, as well as the personnel it employed in the City's jails and hospital prison wards, complied with all City, DOC and DOHMH/CHS policies, the City's Minimum Standards for Health Care, and local, state and federal law.

16.     Upon information and belief, and at all times mentioned herein, Defendants, Detective Dean Campbell ("Det. Campbell") and Police Officers John Doe 1-10 ("PO John Does" or collectively the "defendant police officers[1]"), were residents of the State of New York. The identities of the PO John Does are not presently known, but they are believed to be NYPD officers and supervisory personnel assigned to the 81st Precinct on April 7, 2015 and who were endowed and bestowed with various ranks and appointments upon them by the City and/or NYPD. The defendant police officers are sued in their capacities as individuals as well as in their official capacities as police officers acting under the color of law.

17.     Upon information and belief, and at all times mentioned herein, Defendant Correction Officers John Doe 1-25 (hereinafter referred to as the "defendant correction

---

[1] As used herein, the term "police officer" is intended to refer to NYPD members of service in the general and not to any specific rank, title or position.

officers[2]") are residents of the State of New York. The identities of the defendant correction officers are not presently known, but they are believed to be DOC officers and supervisory personnel assigned to the Intake and housing areas Plaintiff was confined to following his April 7, 2015 arrest and who were endowed and bestowed with various ranks and appointments upon them by the City and/or NYPD. The defendant correction officers are sued in their capacities as individuals as well as in their official capacities as correction officers acting under the color of law.

18.     Defendants John/Jane Does 26-50 are the site directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff (collectively referred to herein as the "defendant healthcare workers") employed by the City and/or Corizon and who were assigned to the Intake and Rikers Island clinics, infirmary and hospital on the subject dates and were responsible for the provision of medical care to Plaintiff on said dates. The defendant healthcare workers were acting under color of state law and within the scope of their capacities as agents, servants, employees, and/or contracted personnel of the City, Corizon and/or DOHMH/CHS, and are sued in their individual and official capacities.

## STATEMENT OF FACTS

19.     On or about April 7, 2015, Plaintiff was lawfully visiting a friend's apartment located at 517 MacDonough Street, Brooklyn, New York. While he was smoking a cigarette in the backyard of said property, Plaintiff heard a loud noise, screaming, and people yelling to get on the floor and not move. Scared, Plaintiff ran out of the backyard, jumped over the fence, and hid.

---

[2] As used herein, the term "correction officer" is intended to refer to DOC members of service in the general and not to any specific rank, title or position.

20.     Plaintiff would soon come to learn that the loud noise, screaming and yelling he heard was a result of the defendant police officers executing a no-knock warrant by kicking the front door off its hinges and raiding said apartment.

21.     At no time was Plaintiff engaged in any unlawful activity. Plaintiff had no connection to the apartment or the contents therein and was not a party to the subject warrant.

22.     The defendant police officers then pursued after Plaintiff and others who had been in the backyard.

23.     The defendant police officers came upon Plaintiff in or about the rear of 618 Macon Street, Brooklyn, New York with their weapons drawn. The defendant police officers ordered Plaintiff get on the floor, get on his knees, and put his hands behind his back. Plaintiff complied and said to the officers, "Don't shoot me!"

24.     After Plaintiff surrendered and was on his knees, with his hands behind his back, the defendant police officers tackled Plaintiff to the ground from behind, forced his face into the ground, and then proceeded to punch and kick him in the arms. Plaintiff screamed to the officers, begging them to stop, that he was not resisting, and that they were going to break his arm.

25.     The defendant police officers refused to stop beating Plaintiff and fractured his wrist.

26.     One of the defendant police officers then put Plaintiff in a submission hold by placing his knee on the back of Plaintiff's neck, pinning him to the ground and preventing him from moving his head to see what was happening.

27.     The defendant police officers then searched Plaintiff's pockets and waistband. No contraband was recovered.

28.     The defendant police officers then stood Plaintiff up, put him against a wall and searched him again. No contraband was recovered.

29.     Despite not recovering any contraband from Plaintiff, or finding any contraband linked to Plaintiff, Det. Campbell handcuffed and arrested Plaintiff and charged him with criminal possession of a loaded firearm (a class C felony), criminal possession of a controlled substance with intent to sell (a class D felony), and criminal possession of marijuana (a class B misdemeanor). Plaintiff was then placed in an NYPD-issued vehicle, at which time he requested that the handcuffs be loosened and he be taken to a hospital as they had fractured his wrist and he had no feeling in his wrists and hands. Plaintiff's requests were refused and/or ignored by Det. Campbell and/or the other police officers.

30.     Thereafter, Plaintiff was transferred to another NYPD vehicle for transport to the 81st precinct stationhouse.

31.     At the stationhouse, Plaintiff again requested medical attention from the defendant police officers. Instead, he was placed in a holding cell and given Tylenol. Plaintiff remained in the holding cell for approximately 6-7 hours. While at the stationhouse, Plaintiff was interrogated by the defendant police officers and asked to submit to DNA testing, which Plaintiff consented to.

32.     After submitting to DNA testing, Plaintiff again requested medical attention from the defendant police officers, who told Plaintiff he needed to speak to Det. Campbell specifically. Upon requesting medical attention from Det. Campbell, Plaintiff's request was refused and he was told that a hospital run would just make the processing take longer. Det. Campbell told Plaintiff to take the Tylenol so that he could be fingerprinted.

33.     During the course of Det. Campbell processing Plaintiff's arrest, he submitted false official reports, including but not limited to an Omniform Arrest Report and Complaint Report, wherein he falsely stated that Plaintiff was "found to be in possession of three loaded firearms, a quantity of assorted ammunition, and a quantity of MDMA and marijuana."

34.     After the arrest was processed, Plaintiff was transferred to Central Booking. At Central Booking, Plaintiff again requested medical attention; however, he was again told that that would just delay the process and that he needed to wait until he reached Rikers Island. Instead of medical care, Plaintiff was given Motrin. He was not given ice, an x-ray, or any other basic care.

35.     On April 8, 2015, Plaintiff was informed that all charges were dismissed. However, Plaintiff was not released from custody as the arrest triggered a parole violation. As a result, Plaintiff was transferred from NYPD custody to DOC custody and removed to Rikers Island on or about April 9, 2015.

36.     At Rikers Island, Plaintiff was seen at the medical intake unit, where he requested to be taken to a hospital. Plaintiff was superficially examined by the defendant healthcare workers, who quickly informed Plaintiff that he only had a minor sprain and contusion. The defendant healthcare workers issued Plaintiff an arm sling and ushered him along to be designated for a housing unit. X-rays were not taken at that time.

37.     Had the defendant healthcare workers performed a meaningful physical examination on Plaintiff and ordered x-rays of his wrist, they would have discovered that he had a displaced scaphoid fracture of his dominant wrist. As a result of such a diagnosis, Plaintiff would have qualified for a different housing unit and/or infirmary/hospital admission. However, since no such testing was ordered or diagnosis made, Plaintiff was assigned to a general

population housing unit. Due to Plaintiff's fractured wrist and an inability to defend himself, he immediately became the frequent target of harassment, assaults and attacks by prisoners. On one such occasion, Plaintiff was robbed of his gold chain, ring and earrings by prisoners.

38.     On April 11, 2015, four days after the onset of injury, an x-ray was finally taken of Plaintiff's wrist. On April 15, 2015, eight days after the onset of injury, Plaintiff was taken to Bellevue Hospital Center, at which time his fracture was diagnosed and his left wrist was casted.

39.     On May 1, 2015, Plaintiff's parole was restored and he was released from DOC custody.

40.     As a result of the foregoing excessive use of force, Plaintiff suffered physical injuries of a serious and important nature. Despite having notice of same, both actual and constructive, the defendants delayed and/or failed to authorize, arrange, or provide timely and adequate medical care or treatment to Plaintiff, resulting in the plaintiff's wrist not healing properly and leaving Plaintiff permanently disabled and suffering sensory diminishment.

41.     Plaintiff's medical condition and needs were of such gravity that they could be considered a serious medical condition. Defendants, by ignoring his requests for treatment, were reckless and acted with deliberate indifference.

42.     As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain.

43.     Plaintiff's aforesaid injuries significantly affect his daily activities.

44.     The failure of all defendants to provide due and timely medical care and treatment to the plaintiff caused further and substantial harm to the plaintiff, including but not limited to increased and prolonged pain, and psychological and emotional injuries.

45.     As a result of the foregoing, Plaintiff suffered physical and emotional injuries,

pain and suffering, disability from his usual activities, and pecuniary losses, and loss of liberty from April 7, 2015 through May 1, 2015.

46.     On June 25, 2015, Plaintiff caused a Notice of Claim to be filed with Defendant City of New York, setting forth the time, place, substance of claim, and description of injuries sustained by the plaintiff.

47.     On October 30, 2015, the City of New York conducted its statutory hearing of Plaintiff.

48.     More than thirty (30) days have elapsed since said Notice of Claim was filed and the City of New York has neglected and refused to make an adjustment thereof.

49.     This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

50.     This action falls within one or more of the exceptions set forth in CPLR §1602.

### FIRST CLAIM FOR RELIEF:
### §1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
_____

51.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "50", inclusive, of this Complaint, as if same were fully set forth herein at length.

52.     As set forth above, the defendant police officers, acting under the color of law, violated Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights; used excessive physical force on Plaintiff; abused their authority to violate Plaintiff's civil rights; falsely detained, arrested and imprisoned Plaintiff; maliciously prosecuted Plaintiff; recklessly ignored, refused and/or denied Plaintiff's numerous requests for medical attention; acted with deliberate indifference to Plaintiff's safety, security, health and immediate medical needs; and knowingly drafted and filed false official reports against Plaintiff in order to cover-up evidence of their

unlawful activities, all without legal cause or justification and with purposeful and malicious intent to cause harm to Plaintiff.

53.     As set forth above, the defendant correction officers, acting under the color of law, violated Plaintiff's Eighth and Fourteenth Amendment rights; recklessly ignored, refused and/or denied Plaintiff's numerous requests for medical attention; recklessly failed to timely approve and arrange transportation and security for Plaintiff to be examined by on-site and off-site medical providers; recklessly assigned Plaintiff to a general population housing unit despite knowing that he had a significant physical injury; in failing to protect Plaintiff from known and reasonably foreseeable harm; and acted with deliberate indifference to Plaintiff's safety, security, health and immediate medical needs, all without legal cause or justification and with purposeful and malicious intent to cause harm to Plaintiff.

54.     As set forth above, the defendant healthcare workers officers, acting under the color of law, violated Plaintiff's Eighth and Fourteenth Amendment rights; denied Plaintiff access to timely, adequate and appropriate medical care; failed to provide medical treatment; failed to inquire into facts necessary to form a proper diagnosis; and failed to administer appropriate testing.

55.     As a direct and proximate result of the defendants' deliberate indifference, the plaintiff suffered physical, psychological and emotional injuries, pain and suffering, disability, pecuniary losses, and loss of freedom.

56.     The aforesaid acts and omissions violated the plaintiff's clearly established rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

57.     As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution of the United States of America and has been damaged thereby.

58.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF: MUNICIPAL LIABILITY

59.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "58", inclusive, of this Complaint, as if same were fully set forth herein at length.

60.     The defendant police officers, correction officers, and healthcare workers, collectively and individually, while acting under color of law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City of New York but which is forbidden by the Constitution of the United States.

61.     That the aforementioned customs, policies, usages, practices, procedures and rules of the City include, but are not limited to: (a) ignoring the constitutional rights of the general public; (b) ignoring the constitutional rights of persons in their custody and control; (c) depriving persons in their custody and control their constitutional rights; (d) using force in an unreasonable, unnecessary, unjustified and excessive manner; (e) failing to adequately instruct and supervise the police officers, correction officers, and healthcare workers under the City's control in the proper and appropriate care and treatment of individuals and detainees in their custody and control; (f) inadequately and/or improperly investigating complaints of harassment, intimidation, misconduct, use of force and abuse by police officers, and inadequately punishing

the subjects of those complaints which were substantiated; (g) tolerating acts of brutality; (h) the Civilian Complaint Review Board, Internal Affairs Bureau, Investigation Department, and Inspector General Offices having substantially failed in their responsibilities to investigate misconduct and discipline offenders; (i) having polices that operate to insulate employees who engage in criminal or other serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; and (j) allowing officers and supervisors to engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence", which has become so ingrained in the defendants so as to constitute a policy of the City of New York.

62.    The City, which, through the NYPD and DOC, is responsible for the care, custody, and control of arrestees and pre-trial detainees, has, through its acts and omissions facilitated the denial and/or delay of appropriate, reasonable, adequate and sufficient medical care to the arrestees and pre-trial detainees committed to its custody, including but not limited to the plaintiff. NYPD and DOC supervisors, officers and staff were the initial stewards of Plaintiff's access to medical care – possessing, *inter alia*, exclusive or near-exclusive control and decision-making authority as to if, when, and how Plaintiff is permitted access to medical care, as well as approving and securing transportation to take Plaintiff from a precinct or jail to an on-site or off-site medical provider.

63.    The City, which, through DOHMH/CHS, is responsible for the provision of medical care to detainees and sentenced inmates in DOC custody, has, through its acts and omissions, facilitated the denial and/or delay of appropriate, reasonable, adequate and sufficient medical care to the inmates in its care, including but not limited to the plaintiff.

64.     Corizon is responsible for the provision of medical care to detainees and sentenced inmates in DOC custody, and has, through its acts and omissions, facilitated the denial and/or delay of appropriate, reasonable, adequate and sufficient medical care to the individuals in its care, including but not limited to the plaintiff. At all relevant times, Corizon was acting under color of state law, was performing governmental functions, and was performing quasi-governmental functions.

65.     For years before the subject events, the City and Corizon were aware of their police and corrections officers' and healthcare workers' routine, dangerous, and unconstitutional deliberate indifference to the health and well-being of individuals in custody, in contravention of the Minimum Standards for Health Care at the City's jails and hospital prison wards, and was the moving force behind the constitutional violations suffered by Plaintiff.

66.     By their policies, practices, acts, and omissions, the City and Corizon caused Plaintiff to be denied and/or delayed access to appropriate, reasonable, adequate and sufficient medical care, in violation of his due process rights under the Eighth and Fourteenth Amendments to the United States Constitution.

67.     The City and Corizon's failure to institute adequate safeguards in their hiring practices for police and correction officers, healthcare workers, and supervisors demonstrates their deliberate indifference to the safety and well-being of persons in custody.

68.     These defendants know that their police and correction officers, medical staff, and supervisors subject persons in custody to denials and/or delays of appropriate, reasonable, adequate and sufficient medical care, to denials and/or delays of sick call visits, to denials and/or delays of cell visits, to denials and/or delays of prescribed medications, to denials and/or delays of prescribed medical devices, and to denials and/or delays of transportation to off-site hospitals.

These behaviors are known and visible, and these defendants have failed to take action despite knowledge of these activities, and have not enforced policies intended to address the wrongful conduct complained of herein.

69.     These defendants permit their police and correction officers, medical staff, and supervisors to continue the abuses alleged herein with minimal risk of disciplinary action.

70.     These defendants have failed to employ obvious measures to reduce the risk of the abuses alleged herein by their police and correction officers, medical staff, and supervisors despite the recent prevalence of heavily publicized deaths, investigative findings by local, state and federal agencies into said deaths, and criminal charges brought against police and correction officers, medical staff, and supervisors related to said deaths.

71.     These defendants' system for reporting and investigation is grossly inadequate. It relies almost entirely on victims reporting their own abuse and then fails to take appropriate action to protect those who do come forward or to punish their abusers.

72.     Corizon has failed to perform routine background checks on their healthcare workers. Corizon has failed to train its employees in critical job duties, including but not limited to requiring its staff to assess injuries and illnesses and make judgments distinguishing true from feigned injuries, but has failed to provide any training as to same.

73.     The City and Corizon have failed to train their staff to take reports of excessive uses of force and denial and/or delay of medical care seriously and to give adequate weight to the credibility of the victims.

74.     These defendants do not consistently investigate reports of excessive uses of force and/or denial/delay of medical care in a prompt or thorough manner, if at all. If an individual reports that he or she has been assaulted or abused by an officer or denied/delayed medical care,

weeks can pass before an investigation begins and by that time the individual may not longer be inclined to cooperate or may have died or suffered serious health consequences. Then, even if an investigation is undertaken, regardless of what the investigation reveals, police and correction officers, medical staff, and their supervisors are rarely disciplined.

75.     NYPD Commissioner Bratton has acknowledged the NYPD's failure to properly train its officers and monitor interaction between officers and the public. Recently, an investigative report released by the New York City Department of Investigation, Office of the Inspector General for the NYPD, dated October 1, 2015, entitled *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* ("OIG-NYPD Report"), reached the following conclusions regarding the NYPD's use-of-force policies, practices, training, and discipline:

- NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force."

- NYPD's current procedures for documenting and reporting force incidents are fragmented across numerous forms, and officers frequently use generic language that fails to capture the specifics of an encounter. The lack of a centralized, uniform use-of-force reporting mechanism leaves...NYPD without adequate data regarding police officer use of force. It is currently impossible to accurately and comprehensively track the use of force by NYPD officers.

- NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public.

- NYPD training does not adequately focus on de-escalation. There is little to no substantive focus on de-escalation in NYPD's training programs.

- In the period reviewed, NYPD frequently failed to impose discipline even when provided with evidence of excessive force. NYPD imposed no discipline with respect to 37 of 104, or 35.6%, of substantiated allegations in which OIG-NYPD's independent review confirmed that officers used excessive force that was not warranted under the circumstances. For those cases decided in the four years between 2010 and 2013, NYPD declined to impose discipline in 34 of 77 allegations, or 44.1% of the time.

- NYPD and CCRB continue to disagree on how officers should be held accountable for use of excessive force... Across 92 substantiated use-of-force allegations, NYPD departed downward from CCRB's disciplinary recommendations – or imposed no disciplinary action whatsoever – 67.4% of the time.

- NYPD should publish an annual report addressing the use of force by officers…Such a report would promote greater transparency and accountability while allowing NYPD to consolidate and learn from data on use of force.

76.    The supervisory staff of the NYPD has consistently failed to investigate allegations such as those contained herein and to discipline officers who violate NYPD guidelines. The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by NYPD to another command rather than be disciplined, demoted or fired.

77.    These defendants' long-standing failure and/or refusal to supervise the police and corrections officers and healthcare workers under their control, and their own supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

78.     Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, site medical directors, and the officers and healthcare workers they supervise.

79.     The failures and refusals by the City and Corizon and their senior officials to hold these officers and healthcare workers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other individuals.

80.     The foregoing customs, policies, usages, practices, procedures and rules of these defendants were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

81.     Prior to the subject incidents, the City adopted Minimum Standards for Health Care at the City's jails and hospital prison wards, which establish minimum standards for DOC, DOHMH/CHS, and Corizon as to, among other things, the training and education of correctional and medical staff; providing inmates access to prompt and adequate medical services; the management and administration of emergency medical care to inmates; the availability of sick-call; the escorting and delivery of inmates to clinics, specialty clinics and hospitals; the intake, initial examination, and screening of inmates to identify immediate medical needs and appropriate housing; conducting diagnostic testing in a timely, appropriate and accurate manner; and the proper and timely management of pharmaceuticals, including but not limited to procedures for prescribing, dispensing, distributing, and administering medication.

82.     The City and Corizon and their senior officials persistently and knowingly failed to ensure that these Minimum Standards were satisfied, even though they understood them to be essential to "insure that the quality of health care services provided to inmates in New York City

correctional facilities is maintained at a level consistent with legal requirements, accepted professional standards and sound professional judgment and practice."

83.     These defendants and their senior officials have consistently failed to staff their clinics, medical units and hospital prison wards with steady, adequately trained correction officers and medical staff. They have also permitted and arranged for overcrowding, despite knowing that overcrowded and unduly stressful environments present serious risks to inmate safety and medical needs.

84.     The City and Corizon and their senior officials knew that their failure to train and oversee the defendant police and correction officers and healthcare workers could cause the type of injuries and disability suffered by Plaintiff. They disregarded this serious risk to the health and safety of those in their care, and as a result, Plaintiff was needlessly caused to suffer physical and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

85.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

**THIRD CLAIM FOR RELIEF:**
**FAILURE TO PROTECT AND NEGLECT**
_____

86.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "85" inclusive, of this Complaint, as if same were fully set forth herein at length.

87.     All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

88.     As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms.

89.     As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

90.     As set forth above, Defendants failed to provide timely and adequate medical care and treatment to Plaintiff.

91.     As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

92.     All defendants failed to report the unlawful conduct alleged herein to supervisors.

93.     Due to the defendants' failures to protect the plaintiff, he suffered severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

94.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## PENDANT STATE CLAIMS

### FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: ASSAULT, BATTERY, UNLAWFUL DETAINER, FALSE ARREST, FALSE IMPRISONMENT, AND MALICIOUS PROSECUTION

95.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "94", inclusive, of this Complaint, as if same were fully set forth herein at length.

96.     As set forth above, Plaintiff was assaulted, battered, falsely arrested, falsely imprisoned and maliciously prosecuted by the defendant police officers.

97.     The aforesaid conduct was in clear violation of the common law, constitution and statutes of the State of New York, the NYS Human Rights Law, the NYS Civil Rights Law, the City Human Rights Law, and the Charter, rules and regulations of the City of New York.

98.     As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

99.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

100.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "99", inclusive, of this Complaint, as if same were fully set forth herein at length.

101.    By reason of the allegations contained herein, Plaintiff was deprived by the defendants of his rights to free speech and peaceable assembly, to be free from retaliation for exercising his constitutional and statutory rights, to be free from unlawful search and seizure, to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, and to due process of law, as guaranteed to him by the Constitution and statutes of the State of New York, the NYS Human Rights Law, the NYS Civil Rights Law, the City Human Rights Law, and the Charter, rules and regulations of the City of New York.

102.    The defendants' conduct manifested deliberate indifference to plaintiff's constitutional rights, for which all defendants are liable.

103.     The aforesaid violations, and the failure of supervisory personnel and the City and NYPD to take appropriate steps to curb the widespread pattern of same or similar conduct by police officers, violated plaintiff's rights under the New York State Constitution, to due process of law, and to be free from degrading treatment and physical abuse.

104.     By their refusal to provide medical attention to plaintiff after he was injured, the defendants violated Plaintiff's constitutional, statutory and common law rights.

105.     As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

106.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION
_____

107.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "106", inclusive, of this Complaint, as if same were fully set forth herein at length.

108.     The City of New York and Corizon were negligent, careless and reckless in their hiring, training, retention, supervision, direction, control, appointment and/or promotion of the their agents, servants and employees, including but not limited to the defendant police and correction officers and healthcare workers, in that said employees lacked the experience and ability to be employed by the City and/or Corizon; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function as employees of said defendants; in that the

defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them; in that said defendants, their agents, servants and/or employees, failed to suspend and/or terminate the defendant-employee(s) when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

109. The failure of the City and Corizon to adequately train their agents, servants and employees, including but not limited to the defendant police and correction officers and healthcare workers, in the exercise of their employment functions, and their failure to enforce the laws of the State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the public in general and Plaintiff in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

110. The City and Corizon knew or should have known in the exercise of reasonable care, the propensities of their agents, servants and employees, including but not limited to the defendant police and correction officers and healthcare workers, to engage in the wrongful conduct heretofore alleged in this Complaint.

111. The City and Corizon knew or should have known that their policies, customs and practices, as well as their negligent hiring, retention, supervision, training, appointment and promotion of their agents, servants and employees, including but not limited to the defendant police and correction officers and healthcare workers, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

112.   That the mistreatment and abuse of the plaintiff, as set forth above, was the reasonably foreseeable consequence of said defendants' negligent conduct.

113.   The aforesaid acts of the City and Corizon, their agents, servants and employees, resulted in the plaintiff being harassed, intimidated, threatened, assaulted, battered, falsely detained, falsely arrested, maliciously prosecution, falsely imprisoned, denied medical care, and his civil rights being violated.

114.   The aforesaid acts of the City and Corizon, their agents, servants and employees, resulted in the plaintiff being denied and/or delayed reasonable, necessary and due medical care following the subject incident.

115.   As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

116.   As a result of the foregoing, Plaintiff is entitled to compensatory damages, attorney's fees, costs, expert's fees, and disbursements.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLECT AND FAILURE TO PROVIDE MEDICAL TREATMENT

117.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "116", inclusive, of this Complaint, as if same were fully set forth herein at length.

118.   Defendants, their agents, servants and/or employees, were required to make available and/or provide medical care and treatment to the plaintiff while he was in their custody and control.

119.     The defendants knew or should have known the extent of the injuries Plaintiff sustained during the subject police encounter and intentionally and/or negligently delayed, denied and/or failed to make medical care and treatment available to Plaintiff.

120.     The defendants knew or should have known that their neglect, denial and/or delay of medical care and treatment to the plaintiff created an unreasonable risk of bodily injury.

121.     The defendants' neglect, denial and/or delay of medical care and treatment did cause and/or exacerbate Plaintiff's physical, psychological and emotional pain and suffering.

122.     As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, and pecuniary loss.

123.     As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

124.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "123", inclusive, of this Complaint, as if same were fully set forth herein at length.

125.     The aforesaid acts of the defendants, their agents, servants and employees, acting individually and/or in conjunction with the other defendants, were intentional, malicious and excessive, and served no reasonable or legitimate penological interest.

126.     The defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiff's physical safety.

127.    As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

128.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENCE

129.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "128", inclusive, of this Complaint, as if same were fully set forth herein at length.

130.    As set forth above, Defendants, their agents, servants and employees, were negligent and the proximate cause of injuries and damages suffered by the Plaintiff.

131.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

132.    Inasmuch as the defendant police and correction officers and healthcare workers were acting for, upon, and/or in furtherance of the business of their employer(s) and/or within the scope of their employment, the City and Corizon are liable, jointly and severally, under the doctrine of *respondeat superior* for the tortious actions of same.

133.    As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

134.   As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: FAILURE TO PROTECT

135.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "134" inclusive, of this Complaint, as if same were fully set forth herein at length.

136.   All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

137.   As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms, including themselves and each other.

138.   As set forth above, each of the defendant police officers failed to intervene, mitigate and/or stop the subject use of force, arrest, search, prosecution and/or imprisonment at any time during the happening of these incidents.

139.   As set forth above, each of the defendant police officers failed to intervene, mitigate and/or stop the refusal, denial and/or delay of medical care during the happening of these incidents.

140.   As set forth above, each of the defendant correction officers failed to intervene, mitigate and/or stop the plaintiff from being harassed, assaulted, battered and robbed by prisoners at any time during the happening of the incident.

141.   As set forth above, each of the defendant correction officers failed to intervene, mitigate and/or stop the refusal, denial and/or delay of medical care during the happening of these incidents.

142.    As set forth above, each of the defendant healthcare workers failed to intervene, mitigate and/or stop the refusal, denial and/or delay of medical care during the happening of these incidents.

143.    As set forth above, the defendants failed to make timely and adequate medical care and treatment to Plaintiff following the subject beating.

144.    As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

145.    All defendants failed to report the abusive conduct of the defendant police officers to supervisors or other authorities.

146.    The City and Corizon, their agents, servants and employees, failed to investigate, sanction and/or discipline any of the defendant police officers for their aforesaid unlawful conduct.

147.    That due to said defendants' failures to protect the plaintiff, he suffered severe and serious physical, psychological and emotional injuries.

148.    As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

149.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

**EIGHTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**PRIMA FACIE TORT**
_____

150.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "149" inclusive, of this Complaint, as if same were fully set forth herein at length.

151.    The aforesaid conduct of the defendants, their agents, servants and employees, as well as their delay and failures to act, caused harm to be inflicted upon the plaintiff out of disinterested malevolence and were the proximate cause of the injuries and damages suffered by the plaintiff.

152.    As a result of the foregoing, Plaintiff suffered violations of his civil and due process rights, severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

153.    As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

Plaintiff requests the following relief jointly and severally as against all of the defendants:

1.    An award of compensatory damages against all defendants in an amount to be determined at trial;

2.    An award of punitive damages against the non-municipal defendants in an amount to be determined at trial;

3.   An award of attorney's fees, expert's fees, costs and disbursements; and

4.   Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
   April 6, 2016

         Respectfully submitted,

         HELD & HINES, LLP
         *Attorneys for Plaintiff*
         2004 Ralph Avenue
         Brooklyn, New York 11234
         (718) 531-9700
         phines@heldhines.com

         By: _____/s/_____
           Philip M. Hines, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ELLIOT CALLENDER,

                                                    Docket No.

                              Plaintiff,

          - against -

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., DETECTIVE DEAN CAMPBELL,
Shield No. 1220, individually and in his official capacity,
POLICE OFFICERS JOHN DOE 1-10, fictitious names
used to identify presently unknown service members of the
81st Precinct, individually and in their official capacities,
CORRECTION OFFICERS JOHN DOE 1-25, fictitious
names used to identify presently unknown correction
officers, individually and in their official capacities, and
JOHN/JANE DOES 26-50, fictitious names used to identify
presently unknown healthcare workers, individually and in
their official capacities

                              Defendants.

--------------------------------------------------------------------X

==================================================================

## VERIFIED COMPLAINT

==================================================================

**HELD & HINES, LLP**
***Attorneys for Plaintiff***
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

==================================================================

                    **Signature (Rule 130-1.1-a)**

                              */s/*

                    _____

                    **PHILIP M. HINES, ESQ.**