UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ELLIOTT CALLENDER,

                    Plaintiff,

  - against -

CITY OF NEW YORK, DETECTIVE DEAN
CAMPBELL, Shield No. 24826, individually and in his
official capacity, DETECTIVE MAXIMILIAN LANZA,
individually and in his official capacity, DETECTIVE
DANIEL NICOLETTI, individually and in his official
capacity, DETECTIVE SHAWN NORDENSCHILD,
Shield No. 24491, individually and in his official capacity,
DETECTIVE ARMANDO SAITTA, Shield No. 3064,
individually and in his official capacity, DETECTIVE
AMJAD KASIJI, Shield No. 6901, individually and in his
official capacity, DETECTIVE GLORIA PAGAN, Shield
No. 20479, individually and in her official capacity, and
DETECTIVE EFRAIN COLLADO, Shield No. 5131,
individually and in his official capacity,

                    Defendants.
-------------------------------------------------------------------X

16 Civ. 1706 (LDH) (CLP)

**VERIFIED AMENDED COMPLAINT**

Jury Trial Demanded

      Plaintiff, ELLIOTT CALLENDER, by his attorneys, HELD & HINES, LLP, as and for his Verified Complaint, hereinafter states and alleges as follows upon information and belief:

**PRELIMINARY STATEMENT**

      1.    Plaintiff commences this civil rights action seeking compensatory damages and attorney's fees against all defendants, together with punitive damages against the non-municipal defendants, for their violations of Plaintiff's constitutional rights while acting under color of law.

      2.    Plaintiff also asserts state law claims pursuant to this Court's supplemental jurisdiction for assault, battery, false arrest, false imprisonment, malicious prosecution, negligence, and failure to intervene and protect.

      3.    Plaintiff suffered physical and emotional injuries, pain and suffering, disability

from his usual activities, loss of liberty, and pecuniary losses stemming from an April 7, 2015 excessive use of force, bogus arrest, false imprisonment, and malicious prosecution by the defendant police officers. After being taken into custody, the defendant police officers recklessly disregarded Plaintiff's serious injuries and denied him access to adequate and timely medical care.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §1983 *et seq.* and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America.

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

6. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

7. Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 for pendent claims arising under New York state law.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Kings County, New York, which is within this judicial district.

## PARTIES

9. At all times mentioned herein, Plaintiff was and remains a resident of the City and State of New York, County of Kings.

10. Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and still is a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the City and State of New York.

11. Upon information and belief, and at all times mentioned herein, the City maintained the New York City Police Department ("NYPD"), New York City Department of Correction ("DOC"), New York City Department of Health and Mental Hygiene ("DOHMH"), and Correctional Health Services ("CHS") pursuant to law.

12. Upon information and belief, and at all times mentioned herein, Defendants, Detective Dean Campbell ("Det. Campbell"), Detective Maximilian Lanza, Detective Daniel Nicoletti, Detective Shawn Nordenschild, Detective Armando Saitta, Detective Amjad Kasiji, Detective Gloria Pagan, and Detective Efrain Collado (collectively the "defendant police officers[1]"), were residents of the State of New York. The defendant police officers are sued in their capacities as individuals as well as in their official capacities as police officers acting under the color of law.

## STATEMENT OF FACTS

13. On or about April 7, 2015, Plaintiff was lawfully visiting a friend's apartment located at 517 MacDonough Street, Brooklyn, New York. While he was smoking a cigarette in the backyard of said property, Plaintiff heard a loud noise, screaming, and people yelling to get on the floor and not move. Scared, Plaintiff ran out of the backyard, jumped over the fence, and hid.

---

[1] As used herein, the term "police officer" is intended to refer to NYPD members of service in the general and not to any specific rank, title or position.

14. Plaintiff would soon come to learn that the loud noise, screaming and yelling he heard was a result of the defendant police officers executing a no-knock warrant by kicking the front door off its hinges and raiding said apartment.

15. At no time was Plaintiff engaged in any unlawful activity. Plaintiff had no connection to the apartment or the contents therein and was not a party to the subject warrant.

16. The defendant police officers pursued after Plaintiff and others who had been in the backyard.

17. The defendant police officers came upon Plaintiff in or about the rear of 618 Macon Street, Brooklyn, New York with their weapons drawn. The defendant police officers ordered Plaintiff get on the floor, get on his knees, and put his hands behind his back. Plaintiff complied and said to the officers, "Don't shoot me!"

18. After Plaintiff surrendered and was on his knees, with his hands behind his back, the defendant police officers tackled Plaintiff to the ground from behind, forced his face into the ground, and then proceeded to punch and kick him in the arms. Plaintiff screamed to the officers, begging them to stop, that he was not resisting, and that they were going to break his arm.

19. The defendant police officers refused to stop beating Plaintiff and fractured his wrist.

20. One of the defendant police officers then put Plaintiff in a submission hold by placing his knee on the back of Plaintiff's neck, pinning him to the ground and preventing him from moving his head to see what was happening.

21. The defendant police officers then searched Plaintiff's pockets and waistband. No contraband was recovered.

22. The defendant police officers then stood Plaintiff up, put him against a wall and searched him again. No contraband was recovered.

23. Despite not recovering any contraband from Plaintiff, or finding any contraband linked to Plaintiff, Det. Campbell arrested Plaintiff and charged him with criminal possession of a loaded firearm (a class C felony), criminal possession of a controlled substance with intent to sell (a class D felony), and criminal possession of marijuana (a class B misdemeanor). Plaintiff was then placed in an NYPD-issued vehicle, at which time he requested that the handcuffs be loosened and he be taken to a hospital as they had fractured his wrist and he had no feeling in his wrists and hands. Plaintiff's requests were refused and/or ignored by Det. Campbell and the other police officers.

24. Thereafter, Plaintiff was transferred to another NYPD vehicle for transport to the 81st precinct stationhouse.

25. At the stationhouse, Plaintiff again requested medical attention from the defendant police officers. Instead, he was placed in a holding cell and given Tylenol. Plaintiff remained in the holding cell for approximately 6-7 hours. While at the stationhouse, Plaintiff was interrogated by the defendant police officers and asked to submit to DNA testing, which Plaintiff consented to.

26. After submitting to DNA testing, Plaintiff again requested medical attention from the defendant police officers, who told Plaintiff he needed to speak to Det. Campbell specifically. Upon requesting medical attention from Det. Campbell, Plaintiff's request was refused and he was told that a hospital run would just make the processing take longer. Det. Campbell told Plaintiff to take the Tylenol so that he could be fingerprinted.

27. During the course of Det. Campbell processing Plaintiff's arrest, he submitted false official reports, including but not limited to an Omniform Arrest Report and Complaint Report, wherein he falsely stated that Plaintiff was "found to be in possession of three loaded firearms, a quantity of assorted ammunition, and a quantity of MDMA and marijuana."

28. After the arrest was processed, Plaintiff was transferred to Central Booking. At Central Booking, Plaintiff again requested medical attention; however, he was again told that that would just delay the process and that he needed to wait until he reached Rikers Island. Instead of medical care, Plaintiff was given Motrin. He was not given ice, an x-ray, or any other basic care.

29. On April 8, 2015, Plaintiff was informed that all charges were dismissed. However, Plaintiff was not released from custody as the arrest triggered a parole violation. As a result, Plaintiff was transferred from NYPD custody to DOC custody and removed to Rikers Island on or about April 9, 2015.

30. At Rikers Island, Plaintiff was seen at the medical intake unit, where he requested to be taken to a hospital. Plaintiff was superficially examined by medical personnel and informed that he only had a minor sprain and contusion and was directed to be sent to a general population housing unit. X-rays performed at that time, however, confirmed that Plaintiff had suffered a non-displaced scaphoid fracture of his dominant wrist.

31. Due to the failure of the City, its agents, servants and employees, to immediately plaster cast Plaintiff's fractured wrist, he was placed in reasonably foreseeable peril when sent to general population in that Plaintiff was unable to defend himself from other inmates. Predictably, Plaintiff immediately became the target of frequent harassment, assaults and attacks by prisoners. On one such occasion, Plaintiff was robbed of his gold chain, ring and earrings by prisoners.

32. On April 15, 2015, eight days after the onset of injury, Plaintiff was taken to Bellevue Hospital Center, at which time his fractured left wrist was finally cast.

33. On May 1, 2015, Plaintiff's parole was restored and he was released from DOC custody.

34. As a result of the foregoing excessive use of force, Plaintiff suffered physical injuries of a serious and important nature. Despite having notice of same, both actual and constructive, the defendants delayed and/or failed to authorize, arrange, or provide timely and adequate medical care or treatment to Plaintiff, resulting in the plaintiff's wrist not healing properly and leaving Plaintiff permanently disabled and suffering sensory diminishment.

35. Plaintiff's medical condition and needs were of such gravity that they could be considered a serious medical condition. Defendants, by ignoring his requests for treatment, were reckless and acted with deliberate indifference.

36. As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain.

37. Plaintiff's aforesaid injuries significantly affect his daily activities.

38. The failure of all defendants to provide due and timely medical care and treatment to the plaintiff caused further and substantial harm to the plaintiff, including but not limited to increased and prolonged pain, and psychological and emotional injuries.

39. As a result of the foregoing, Plaintiff suffered physical and emotional injuries, pain and suffering, disability from his usual activities, and pecuniary losses, as well as loss of liberty from April 7, 2015 through May 1, 2015.

40. On June 25, 2015, Plaintiff caused a Notice of Claim to be filed with the City of New York, setting forth the time, place, substance of claim, and description of injuries sustained

by the plaintiff.

41. On October 30, 2015, the City of New York conducted its statutory hearing of Plaintiff.

42. More than thirty (30) days have elapsed since said Notice of Claim was filed and the City of New York has neglected and refused to make an adjustment thereof.

43. This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

44. This action falls within one or more of the exceptions set forth in CPLR §1602.

## FIRST CLAIM FOR RELIEF:
## §1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

45. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "44", inclusive, of this Complaint, as if same were fully set forth herein at length.

46. As set forth above, the defendant police officers, acting under the color of law, violated Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights; used excessive physical force on Plaintiff; abused their authority to violate Plaintiff's civil rights; falsely detained, arrested and imprisoned Plaintiff; maliciously prosecuted Plaintiff; recklessly ignored, refused and/or denied Plaintiff's numerous requests for medical attention; recklessly failed to timely approve and arrange transportation for Plaintiff to be examined at a hospital; acted with deliberate indifference to Plaintiff's safety, security, health and immediate medical needs; and knowingly drafted and filed false official reports against Plaintiff in order to cover-up evidence of their unlawful activities, all without legal cause or justification and with purposeful and malicious intent to cause harm to Plaintiff.

47. As a direct and proximate result of the defendants' deliberate indifference, the plaintiff suffered physical, psychological and emotional injuries, pain and suffering, disability, pecuniary losses, and loss of freedom.

48. The aforesaid acts and omissions violated the plaintiff's clearly established rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

49. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY

50. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "49", inclusive, of this Complaint, as if same were fully set forth herein at length.

51. The defendant police officers, collectively and individually, while acting under color of law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City of New York but which is forbidden by the Constitution of the United States.

52. The City, which, through the NYPD, is responsible for the care, custody, and control of arrestees, has, through its acts and omissions facilitated the denial and/or delay of appropriate, reasonable, adequate and sufficient medical care to the arrestees committed to its custody, including but not limited to the plaintiff. NYPD supervisors, officers and staff were the initial stewards of Plaintiff's access to medical care – possessing, *inter alia*, exclusive control and decision-making authority as to if, when, and how Plaintiff is permitted access to medical

care, as well as approving and securing transportation to take Plaintiff from the precinct to a hospital.

53. By their policies, practices, acts, and omissions, the City caused Plaintiff to be denied access to appropriate, reasonable, adequate and sufficient medical care, in violation of the Fourteenth Amendment of the United States Constitution.

54. The City's failure to institute adequate safeguards in their hiring practices for police officers demonstrates their deliberate indifference to the safety and well-being of persons under arrest.

55. The City knows that its police officers and supervisors subject persons in custody to denials and/or delays of appropriate, reasonable, adequate and sufficient medical care and to denials and/or delays of transportation to hospitals. These behaviors are known and visible, and the City has failed to take action despite knowledge of these activities, and has not enforced policies intended to address the wrongful conduct complained of herein.

56. The City permits its police officers and supervisors to continue the abuses alleged herein with minimal risk of disciplinary action.

57. The City has failed to employ obvious measures to reduce the risk of the abuses alleged herein by its police officers and supervisors despite the recent prevalence of heavily publicized deaths, investigative findings by local, state and federal agencies into said deaths, and criminal charges brought against police officers and supervisors related to said deaths.

58. The City's system for reporting and investigation is grossly inadequate. It relies almost entirely on victims reporting their own abuse and then fails to take appropriate action to protect those who do come forward or to punish their abusers.

59.   The City has failed to train their staff to take reports of excessive uses of force and denial and/or delay of medical care seriously and to give adequate weight to the credibility of the victims.

60.   The City does not consistently investigate reports of excessive uses of force and/or denial/delay of medical care in a prompt or thorough manner, if at all. If an individual reports that he or she has been assaulted or abused by an officer or denied/delayed medical care, weeks can pass before an investigation begins and by that time the individual may not longer be inclined to cooperate or may have died or suffered serious health consequences. Then, even if an investigation is undertaken, regardless of what the investigation reveals, police officers and their supervisors are rarely disciplined.

61.   An investigative report by the New York City Department of Investigation, Office of the Inspector General for the NYPD, dated October 1, 2015, entitled *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* ("OIG-NYPD Report"), reached the following conclusions regarding the NYPD's use-of-force policies, practices, training, and discipline:

- NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force."

- NYPD's current procedures for documenting and reporting force incidents are fragmented across numerous forms, and officers frequently use generic language that fails to capture the specifics of an encounter. The lack of a centralized, uniform use-of-force reporting mechanism leaves...NYPD without adequate data regarding police officer use of force. It is currently impossible to accurately and comprehensively track the use of force by NYPD officers.

- NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public.

- NYPD training does not adequately focus on de-escalation. There is little to no substantive focus on de-escalation in NYPD's training programs.

- In the period reviewed, NYPD frequently failed to impose discipline even when provided with evidence of excessive force. NYPD imposed no discipline with respect to 37 of 104, or 35.6%, of substantiated allegations in which OIG-NYPD's independent review confirmed that officers used excessive force that was not warranted under the circumstances. For those cases decided in the four years between 2010 and 2013, NYPD declined to impose discipline in 34 of 77 allegations, or 44.1% of the time.

- NYPD and CCRB continue to disagree on how officers should be held accountable for use of excessive force... Across 92 substantiated use-of-force allegations, NYPD departed downward from CCRB's disciplinary recommendations – or imposed no disciplinary action whatsoever – 67.4% of the time.

- NYPD should publish an annual report addressing the use of force by officers...Such a report would promote greater transparency and accountability while allowing NYPD to consolidate and learn from data on use of force.

These failures in the City's policies and training were the moving force behind the constitutional violations suffered by Plaintiff during his apprehension and arrest.

62.   The supervisory staff of the NYPD has consistently failed to investigate allegations such as those contained herein and to discipline officers who violate NYPD guidelines. The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by NYPD to another command rather than be disciplined, demoted or fired.

63. The City's long-standing failure and/or refusal to supervise the police officers under its control, and its own supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused the deprivation of the plaintiff's rights.

64. Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, and the officers they supervise.

65. The failures and refusals by the City and its senior officials to hold these officers accountable is a proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other individuals.

66. The foregoing customs, policies, usages, practices, procedures and rules of these defendants were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

67. The City and its senior officials knew that their failure to train and oversee the defendant police officers could cause the type of injuries and disability suffered by Plaintiff. They disregarded this serious risk to the health and safety of those in their care, and as a result, Plaintiff was needlessly caused to suffer physical and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

68. As a result of the foregoing, Plaintiff is entitled to compensatory damages, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## THIRD CLAIM FOR RELIEF:
## FAILURE TO INTERVENE AND NEGLECT

69. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "68" inclusive, of this Complaint, as if same were fully set forth herein at length.

70. All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

71. As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms.

72. As set forth above, Defendants failed to intervene, mitigate and/or stop the events alleged herein.

73. As set forth above, Defendants failed to provide timely and adequate medical care and treatment to Plaintiff.

74. As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

75. As set forth above, the defendants disregarded a substantial risk of harm to the plaintiff by failing to take reasonable measures to abate the harm.

76. All defendants failed to report the unlawful conduct alleged herein to supervisors.

77. Due to the defendants' failures to intervene, Plaintiff suffered severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

78. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## PENDANT STATE CLAIMS

### FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: ASSAULT, BATTERY, UNLAWFUL DETAINER, FALSE ARREST, FALSE IMPRISONMENT, AND MALICIOUS PROSECUTION

79. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "78", inclusive, of this Complaint, as if same were fully set forth herein at length.

80. As set forth above, Plaintiff was assaulted, battered, falsely arrested, falsely imprisoned and maliciously prosecuted by the defendant police officers.

81. As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

82. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: NEGLIGENCE

83. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "82", inclusive, of this Complaint, as if same were fully set forth herein at length.

84. As set forth above, Defendants, their agents, servants and employees, were negligent and the proximate cause of injuries and damages suffered by the Plaintiff.

85. As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

86. Inasmuch as the defendant police officers were acting for, upon, and/or in furtherance of the business of their employer(s) and/or within the scope of their employment, the

City is liable, jointly and severally, under the doctrine of *respondeat superior* for the tortious actions of same.

87. As a result of the defendants' negligence, Plaintiff suffered severe and serious physical, psychological and emotional injuries, extreme pain and suffering, significant disfigurement, disability, pecuniary loss, and loss of freedom.

88. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

### THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: FAILURE TO INTERVENE AND PROTECT

89. Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "88" inclusive, of this Complaint, as if same were fully set forth herein at length.

90. All defendants, their agents, servants and employees, owed a duty to care and protect Plaintiff while he was in their custody, control and care.

91. As set forth above, all defendants failed to protect Plaintiff from known and dangerous harms, including themselves and each other.

92. As set forth above, each of the defendant police officers failed to intervene, mitigate and/or stop the subject use of force, arrest, search, prosecution and/or imprisonment at any time during the happening of these incidents although they had time and opportunity to do so.

93. As set forth above, each of the defendant police officers failed to intervene, mitigate and/or stop the refusal, denial and/or delay of medical care during the happening of these incidents although they had time and opportunity to do so.

94. As set forth above, the City, its agents, servants and employees, failed to protect Plaintiff from known and foreseeable harm while in DOC custody such that they negligently assigned him to a general population housing unit where he was repeatedly harassed, assaulted, and robbed by other prisoners.

95. As set forth above, the City, its agents, servants and employees, failed to intervene in order to ensure that Plaintiff received appropriate medical care for his fractured wrist, such that it took eight (8) days for his wrist to be cast, during which Plaintiff unnecessarily suffered prolonged pain and suffering and harassment by prisoners.

96. As set forth above, by failing to timely provide appropriate medical care and then placing Plaintiff in a general population housing unit, the City, its agents, servants and employees, disregarded a substantial risk of harm to the plaintiff by failing to take reasonable measures to abate the harm.

97. As set forth above, all defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety.

98. All defendants failed to report the abusive conduct of the defendant police officers to supervisors or other authorities.

99. The City, its agents, servants and employees, failed to investigate, sanction and/or discipline any of the defendant police officers for their aforesaid unlawful conduct.

100. That due to said defendants' failures to protect the plaintiff and intervene as appropriate, Plaintiff suffered severe and serious physical, psychological and emotional injuries, and loss of freedom.

101. As a result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, and attorney's fees, costs, expert's fees, and disbursements.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

Plaintiff requests the following relief jointly and severally as against all of the defendants:

1. An award of compensatory damages against all defendants in an amount to be determined at trial;

2. An award of punitive damages against the non-municipal defendants in an amount to be determined at trial;

3. An award of attorney's fees, expert's fees, costs and disbursements; and

4. Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
November 21, 2016

Respectfully submitted,

HELD & HINES, LLP
*Attorneys for Plaintiff*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

By: _____
Philip M. Hines, Esq.

## VERIFICATION

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

ELLIOTT CALLENDER, being duly sworn deposes and says:

That deponent is the plaintiff in the within action; that deponent has read the foregoing **AMENDED VERIFIED COMPLAINT** and knows the contents thereof, that same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

_____
**ELLIOTT CALLENDER**

Sworn before me this 21
day of NOVEMBER

_____
NOTARY PUBLIC

TARYN ZMUDA
Notary Public, State of New York
No. 01ZM6340841
Qualified in Queens County
Commission Exp 4-25-20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ELLIOTT CALLENDER,

                              Plaintiff,

16 Civ. 1706 (LDH) (CLP)

  - against -

CITY OF NEW YORK, DETECTIVE DEAN
CAMPBELL, Shield No. 24826, individually and in his
official capacity, DETECTIVE MAXIMILIAN LANZA,
individually and in his official capacity, DETECTIVE
DANIEL NICOLETTI, individually and in his official
capacity, DETECTIVE SHAWN NORDENSCHILD,
Shield No. 24491, individually and in his official capacity,
DETECTIVE ARMANDO SAITTA, Shield No. 3064,
individually and in his official capacity, DETECTIVE
AMJAD KASIJI, Shield No. 6901, individually and in his
official capacity, DETECTIVE GLORIA PAGAN, Shield
No. 20479, individually and in her official capacity, and
DETECTIVE EFRAIN COLLADO, Shield No. 5131,
individually and in his official capacity,

                              Defendants.
-------------------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT

**HELD & HINES, LLP**
*Attorneys for Plaintiff*
**Office & Post Office Address
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700**

Signature (Rule 130-1.1-a)

PHILIP M. HINES, ESQ.